

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DENNIS M. MULLEN,

               Plaintiff,

     v.

VILLAGE OF PAINTED POST, RALPH
FOSTER, *as Mayor of Painted Post*, DAVID
SMITH, *Individually and as Trustee of Village
Board of Painted Post*, RICHARD LEWIS,
*Individually and as Trustee of Village
Board of Painted Post*, BRIAN FRANCIS,
*Individually and as Trustee of Village
Board of Painted Post*, and WILLIAM
SCHEIDWEILER, *Individually and as Trustee
of Village Board of Painted Post*,

               Defendants.

_____

**DECISION AND ORDER**

6:17-CV-06728 EAW

## INTRODUCTION

Plaintiff Dennis M. Mullen ("Plaintiff"), the former police chief for defendant the

Village of Painted Post (the "Village"), brings this action pursuant to 42 U.S.C § 1983 for

an alleged violation of his right to due process, and he also asserts a claim under New York

State law. (Dkt. 2). Presently before the Court is Defendants' motion for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons discussed

below, Defendants' motion is granted in part and denied in part.

- 1 -

## BACKGROUND

### I.     Factual Background

The following facts are taken from Plaintiff's Amended Complaint. (Dkt. 2). The Court further takes judicial notice of the allegations set forth in the Verified Petition filed by Plaintiff in New York state court (Dkt. 21-2), which provide additional context. *See Landow v. Wachovia Sec., LLC*, 966 F. Supp. 2d 106, 119 (E.D.N.Y. 2013) ("A district court may . . . take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings. . . ." (internal quotation omitted)). As is required at this stage of the proceedings, the Court has treated Plaintiff's allegations as true.

Plaintiff is a retiree of the New York State Police and is receiving a pension from the New York State Retirement System with respect to that service. (Dkt. 21-2 at ¶ 10). Pursuant to New York State Retirement and Social Security Law ("RSSL") § 212, such a retiree may return to work in the public sector and earn up to $30,000 per year without affecting his pension. In addition, RSSL § 211 sets forth criteria for a waiver permitting a retiree to return to public service and earn more than $30,000 without affecting his pension; Plaintiff was granted such a waiver with respect to his employment as the Village's police chief. (*Id.* at ¶¶ 12-23).

The position of police chief is classified in the "competitive class" by the Steuben County Civil Service, and Plaintiff claims to have held the position as a permanent appointment. (Dkt. 2 at ¶¶ 12, 13). Plaintiff contends that pursuant to New York Civil Service Law § 75 (hereinafter "NYCSL § 75"), "an employee with a permanent

appointment to a position in the competitive class may be removed from his position only upon a finding of incompetence or misconduct[.]" (Dkt. 2 at ¶ 14).

On or about September 14, 2017, Plaintiff was informed that the Village had identified a non-retired candidate for the role of police chief. (Dkt. 21-2 at ¶ 20)[1]. That same day, Defendant Ralph Foster ("Mayor Foster") issued a memorandum to Plaintiff requiring him to select one of three options by October 2, 2017: (1) maintain his $60,000 per year salary and suspend his pension; (2) reduce his salary to $30,000 per year and continue to collect his pension; or (3) resign. (*Id.* at ¶ 21).

On or about October 2, 2017, Plaintiff met with Mayor Foster and Defendant Brian Francis, a member of the Village's Board of Trustees (the "Village Board"). (*Id.* at ¶ 22). Plaintiff requested additional time and information before electing from the offered options, but the Village Board "refused to give him additional time and notified him that he was terminated as Police Chief." (Dkt. 2 at ¶ 19).

II.    **Procedural Background**

Plaintiff commenced the instant action on October 23, 2017. (Dkt. 1). The Amended Complaint (the operative pleading) was filed on October 24, 2017. (Dkt. 2). Defendants answered the Amended Complaint on December 6, 2017. (Dkt. 9).

---

[1]    One of the requirements for a waiver under RSSL § 211 is that there are "no available non-retired persons qualified to perform the duties of such position." N.Y. RSSL § 211(2)(b)(5)(ii). As discussed further below, Plaintiff's Amended Complaint and his Verified Petition contain different information regarding the time at which he learned there was a non-retired candidate for the police chief position.

On January 31, 2018, Plaintiff filed a Verified Petition challenging his termination in New York State Supreme Court, Steuben County, pursuant to N.Y. Civil Practice Law and Rules Article 78 ("Article 78"). (Dkt. 21-2). Respondents filed a Verified Answer to Plaintiff's Verified Petition on March 6, 2018. (Dkt. 21-3). On March 28, 2018, the state court entered an order finding that Defendants had violated NYCSL § 75, "notwithstanding any alleged outstanding issues with respect to the RSSL 211 waiver," and ordering that Plaintiff be reinstated to his position with full back pay and benefits. (Dkt. 21-4 at 1-2).

Defendants filed the instant motion for judgment on the pleadings on March 14, 2018. (Dkt. 17). Plaintiff filed a response on May 1, 2018 (Dkt. 21), and Defendants filed a reply on May 7, 2018 (Dkt. 22).

## DISCUSSION

### I. Legal Standard

"Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *McAuliffe v. Barnhart*, 571 F. Supp. 2d 400, 402 (W.D.N.Y. 2008). "In deciding a Rule 12(c) motion for judgment on the pleadings, the court should 'apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Aboushama v. EMF Corp.*, 214 F. Supp. 3d 202, 205 (W.D.N.Y. 2016) (quoting *Mantena v. Johnson*, 809 F.3d 721, 727-28 (2d Cir. 2015)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents

attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To withstand dismissal, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.    Plaintiff's Due Process Claims

Plaintiff's Amended Complaint contains three causes of action, two of which are based on the alleged denial of his right to federal due process (Dkt. 2 at ¶¶ 25-31), and the third of which is a state law claim for violation of NYCSL § 75 (*id.* at ¶¶ 32-33). Defendants seek judgment on the pleadings as to all of Plaintiff's claims. With respect to the due process claims, Defendants argue that the pre-deprivation procedures used in this

case, combined with the availability of post-deprivation review under Article 78, satisfy the requirements of due process. The Court disagrees that the due process claims can be resolved as a matter of law at this stage of the proceedings, for the reasons discussed below.

## A. Applicable Legal Principles

The Due Process Clause of the Fourteenth Amendment was "intended to secure the individual from the arbitrary exercise of the powers of government . . . [and] serves to prevent governmental power from being used for purposes of oppression." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (quotations and citations omitted). To succeed on a due process claim, a plaintiff must establish that "he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994). The Second Circuit has recognized that continued public employment covered by NYCSL § 75 gives rise to a protected property interest. *See O'Neill v. City of Auburn*, 23 F.3d 685, 688 (2d Cir. 1994) ("We have previously held that § 75 gives covered employees a property interest in their employment, so that they may not be terminated without notice and hearing."); *Dwyer v. Regan*, 777 F.2d 825, 829 (2d Cir. 1985) ("[A]n employee of the New York City Police Department whose position was subject to N.Y. Civ. Serv. Law § 75(1) thereby possessed an enforceable expectation of continued public employment, which constituted a property interest in [her] job that will be protected by the due process clause." (quotation marks omitted)), *modified*, 793 F.2d 457 (2d Cir. 1986); *Anderson v. Dolce*, 653 F. Supp. 1556, 1565 (S.D.N.Y. 1987) ("Both federal and state courts have found that Section 75 creates a

property interest in continued employment, with the requisite minimum standards of due process attaching.").[2]

"An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation omitted). Accordingly, "[d]ue process dictates that certain public employees who are to be terminated receive, at a minimum, notice of charges and an extremely limited hearing prior to the termination." *Longo v. Suffolk Cty. Police Dep't*, 429 F. Supp. 2d 553, 559 (E.D.N.Y. 2006). "After termination, the employee is entitled to a full adversarial hearing before a neutral adjudicator." *Id.*

"To evaluate whether a plaintiff received due process, one of two standards may apply. If the deprivation is the result of 'unauthorized acts by state employees,' the Fourteenth Amendment is not violated 'so long as the State provides a meaningful post-deprivation remedy.' If the deprivation 'occurs in the more structured environment of established State procedures, rather than random acts, the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process.'" *Langton v. Town of Chester*, 168 F. Supp. 3d 597, 606 (S.D.N.Y. 2016) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996)). Instead, in such cases, the Court considers the adequacy of the pre-deprivation procedures, taking into account:

---

[2] Plaintiff alleges deprivation of both a property interest and a liberty interest. (*See* Dkt. 2 at 22-24). The parties make no distinction in these interests in arguing for and against dismissal.

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010).

## B. Plaintiff has Alleged that he was Deprived of a Meaningful Pre-termination Opportunity to Respond

Here, treating Plaintiff's allegations as true and drawing all inferences in his favor, the Court finds that Plaintiff has adequately alleged a violation of his right to due process. In particular, the Court finds that while Plaintiff was provided with pre-termination notice of the potential termination of his employment and a post-termination adversarial hearing, he has adequately alleged that he was not provided a meaningful pre-termination opportunity to respond to Mayor Foster's memorandum.

As a threshold matter, the Court finds that Plaintiff has adequately alleged that the challenged actions were undertaken pursuant to established state procedures. The Second Circuit has held that "acts of high-ranking officials who are ultimate decision-maker[s] and have final authority over significant matters, even if those acts are contrary to law, should not be considered random and unauthorized conduct for purposes of a procedural due process analysis." *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (quotations omitted and alteration in original). Here, Plaintiff alleges that the actions at issue were taken by Mayor Foster and the Village Board, the entities vested with final decision-making authority regarding his employment. Accordingly, "a post-deprivation

procedural safeguard such as an Article 78 proceeding does not automatically satisfy due process, and the Court must undertake a *Mathews* balancing analysis" to determine whether Plaintiff's due process rights were violated. *Langton*, 168 F. Supp. 3d at 607.[3]

Considering the factors set forth in *Mathews*, the Court finds that Plaintiff has adequately alleged that the procedures used in this case failed to satisfy the requirements of due process. Plaintiff alleges in the Amended Complaint that he was informed of the existence of a non-retired candidate on October 2, 2017, directed to elect among the offered options, and terminated when he requested additional time and information. (Dkt. 2 at ¶¶ 15-19). Plaintiff's Article 78 Petition presents a somewhat different story, alleging that Plaintiff was initially presented with the options in a written memorandum from Mayor Foster on September 14, 2017, and required to respond by October 2, 2017. (Dkt. 21-2 at ¶¶ 20-21). Plaintiff's Article 78 Petition further alleges that when he met with Mayor Foster on October 2, 2017, Mayor Foster refused to provide any clarification, presented him with documents that contained language different from that contained in the September 14th memorandum, and terminated Plaintiff when he requested additional time to review the revised language with his attorney. (*Id.* at ¶¶ 22-27).

---

[3]     The Court also notes that Plaintiff contends that Defendants failed to comply with the state court's order in the Article 78 proceeding. (*See* Dkt. 21 at 2). It is axiomatic that Defendants cannot rely on the existence of an Article 78 proceeding to satisfy the requirements of due process if they have not complied with the requirements of Article 78. If, on the other hand, Defendants have indeed complied with the state court's order and restored Plaintiff to his former position with full backpay, Plaintiff's claims (and potential damages) in this action may be limited. However, those sorts of factual disputes are not amenable to resolution on a motion for judgment on the pleadings.

Under either of these versions of the facts, the Court cannot conclude, as a matter of law and taking into account the *Mathews* factors, that Plaintiff was afforded due process. With respect to the first *Mathews* factor, Plaintiff had a substantial interest in his continued employment. *See Hudson v. City of Chicago*, 374 F.3d 554, 560 (7th Cir. 2004) ("The loss of a job is an extremely significant deprivation."). Moreover, the alleged procedures employed by Defendants carried an undue risk of erroneous deprivation, because Plaintiff was purportedly not afforded the opportunity to meaningfully consider the options before Defendants demanded that he chose among them, nor was he permitted to have a full discussion with Defendants regarding the options. *See Langton*, 168 F. Supp. 3d at 607-608 (finding the risk of erroneous deprivation "high" where the plaintiff and her counsel were not permitted access to the information on which the decision was made, which called into question "the thoroughness of the Library Board's decision-making process"). For similar reasons, additional procedures (namely, the provision of appropriate information and time for Plaintiff to consider his options and respond) would likely have provided value to the decision-making process. The Court further finds, on the record before it, that Defendants have not articulated a meaningful interest in failing to provide Plaintiff with the additional time and information he requested. Nothing in the pleadings suggests that time was of the essence such that no additional time could be extended to Plaintiff. Under these circumstances, the Court finds that judgment on the pleadings is not warranted as to Plaintiff's due process claims and denies Defendants' motion in this regard.

The Court's conclusion is not altered by Defendants' conclusory assertion that Plaintiff failed to exhaust his state remedies before commencing the instant action.

"Congress has neither explicitly nor implicitly required exhaustion of state remedies to bring section 1983 claims under the First or Fourteenth Amendments outside of the context of prisoner suits." *Bal v. Manhattan Democratic Party*, No. 16-CV-2416 (PKC), 2018 WL 6528766, at *4 (S.D.N.Y. Dec. 12, 2018); *see also Chase Grp. All.*, 620 F.3d at 153 ("This is not by any means to say that valid Section 1983 claims based on due process violations require exhaustion of state remedies."). Defendants have not provided any authority for their contention that Plaintiff's claims should be dismissed for failure to exhaust, nor has the Court uncovered any such authority in its own research.

Finally, the Court is not persuaded by Defendants' argument that it should abstain from deciding this case pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Under *Colorado River*, a federal district court "may abstain from exercising jurisdiction over a controversy properly before it when parallel state court litigation could result in the comprehensive disposition of litigation and abstention would conserve judicial resources." *Superior Site Work, Inc. v. NASDI, LLC*, No. 214CV01061ADSSIL, 2018 WL 4834558, at *1 (E.D.N.Y. Oct. 2, 2018) (quotation omitted). "Abstention is generally disfavored, and federal courts have a virtually unflagging obligation to exercise their jurisdiction. The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction, and [i]n this analysis, the balance is heavily weighted in favor of the exercise of jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quotations and citations omitted and alteration in original).

"In evaluating whether *Colorado River* abstention is appropriate, federal district courts are to consider six factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). The six factors are: (1) whether the controversy involves a particular *res* over which one of the courts has assumed jurisdiction; (2) whether the federal forum is more convenient than the other; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights. *Id.*

In this case, the Court finds that *Colorado River* abstention is plainly not appropriate. Plaintiff's Article 78 proceeding was a limited one, and it did not include the due process claims made here. *See Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 243 (E.D.N.Y. 2009) (*Colorado River* abstention not warranted where federal lawsuit involved issues not raised in Article 78 proceeding). Moreover, the instant lawsuit was filed prior to Plaintiff's Article 78 proceeding, and Plaintiff alleges that the remedy ordered by the state court was not implemented. (*See* Dkt. 21 at 5). Under these circumstances, the Court finds no basis in *Colorado River* to stay or dismiss this action.

## III.   Plaintiff's State Law Claim

Plaintiff's third cause of action is a state law claim for violation of Plaintiff's "statutory rights pursuant to Civil Service Law Section 75." (Dkt. 2 at ¶¶ 32-33). Defendants argue that the Court lacks jurisdiction over this claim, because it is "in fact an

attempt to commence a proceeding under Article 78 in this Court." (Dkt. 17-2 at 4-5).

Plaintiff has offered no response to this argument, but instead has puzzlingly asserted that

he is "not seeking the Court to assert jurisdiction over any state law claims." (Dkt. 21 at

6). However, Plaintiff's third cause of action clearly arises under state law. The Court

finds that it should not exercise jurisdiction over this claim, for the reasons set forth below.

Under New York law, a civil servant claiming that an adverse employment action

failed to comport with the requirements of NYCSL § 75 "may appeal the adverse

employment decision to either the [state Civil Service Commission] or the New York State

Supreme Court as an Article 78 proceeding[.]" *Almanzar v. City of N.Y.*, No. 16-CV-02696

(ALC), 2017 WL 4330375, at *5 (S.D.N.Y. Sept. 27, 2017); *see also Karlen v. New York

Univ.*, No. 78 CIV. 3416 (GLG), 1980 WL 240, at *1 (S.D.N.Y. Sept. 17, 1980), *amended,*

No. 78-DIV. 3416 (GLG), 1980 WL 343 (S.D.N.Y. Dec. 12, 1980) (under New York law,

"Article 78 provide[s] the exclusive remedy for discharged public employees" (citing

*Austin v. Bd. of Higher Educ.*, 5 N.Y.2d 430, 441 (1959))). Though it may not be labeled

as such, Plaintiff's third cause of action seeks judicial review that is available only via an

Article 78 proceeding. Indeed, Plaintiff's third cause of action raises the same issues and

seeks the same relief he sought in his Article 78 proceeding.

Moreover, Defendants are correct that it is generally inappropriate for a federal

district court to exercise supplemental jurisdiction over an Article 78 claim. *See, e.g.,*

*Bartolini v. Cassels,* No. 17CV5671NSRPED, 2018 WL 3023161, at *6 (S.D.N.Y. June

18, 2018) ("District Courts in this Circuit have consistently declined to exercise

supplemental jurisdiction over Article 78 claims.") (collecting cases); *Nitti v. Cty. of Tioga,*

No. 3:14-CV-0954 GTS/DEP, 2015 WL 5708637, at *9 (N.D.N.Y. Sept. 28, 2015) ("Courts have found that compelling reasons to decline to exercise supplemental jurisdiction exist in the very nature of an Article 78 proceeding[.]") (quotations omitted); *Riddles v. Sallie Mae*, No. 08-CV-1499 (NG), 2009 WL 3734302, at *2 (E.D.N.Y. Nov. 4, 2009) ("[O]nly the New York state courts have jurisdiction over Article 78 proceedings."); *Beckwith v. Erie Cty. Water Auth.*, 413 F. Supp. 2d 214, 226-27 (W.D.N.Y. 2006) ("[T]his court has no original or supplemental subject matter jurisdiction over [an] Article 78 proceeding as neither federal nor New York state law empower the federal courts to consider such claims, and, under New York law, authority to grant relief pursuant to an Article 78 proceeding is exclusively vested in New York Supreme Court.").[4] As such, the Court will not exercise jurisdiction over Plaintiff's third cause of action, and Defendants' motion is granted as to this claim.

## IV.   Official Capacity Claims

Plaintiff's Amended Complaint purports to assert claims against the individual defendants in both their individual and official capacities. (*See* Dkt. 2 at 1). Defendants ask the Court to dismiss the official capacity claims as redundant; this request is granted.

---

[4]    The case law is somewhat mixed regarding whether the Court simply lacks jurisdiction over an Article 78 claim, or whether the Court should exercise its discretion under 28 U.S.C. § 1367(c) and decline to exercise supplemental jurisdiction. The Court need not and does not resolve this issue, because to the extent it may have supplemental jurisdiction, it agrees with the courts that have found "compelling reasons" for declining to exercise such jurisdiction over Article 78 claims under 28 U.S.C. § 1367(c)(4). *See, e.g., Nitti*, 2015 WL 5708637, at *9.

"The real party in interest in an official capacity suit is the governmental entity and not the named official." *Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002). "Thus, if a plaintiff makes the same claims against municipal officers in their official capacities and the municipality in which the officers are employed, the official capacity claims are redundant and should be dismissed." *Olschafskie v. Town of Enfield*, No. 3:15-CV-00067 (MPS), 2015 WL 9239742, at *1 (D. Conn. Dec. 17, 2015). Here, Plaintiff's official capacity claims against the individual defendants are redundant, because he has asserted the same claims against the Village. Accordingly, the Court dismisses the official capacity claims.

Plaintiff's argument that he seeks punitive damages as to the individual defendants is irrelevant to the Court's analysis. Defendants have not sought dismissal of the individual capacity claims against the individual defendants. As such, Plaintiff remains free to seek punitive damages as to the individual defendants in their individual capacities, to the extent such damages are available under applicable law.

## V.     Claims Against Deceased Defendant Richard Lewis

Defendants seek dismissal of all claims against Defendant Richard Lewis, because he is deceased and his estate has not been substituted for him as a party. Defendants' request is granted.

Federal Rule of Civil Procedure 25(a) governs substitution of parties upon death, and provides in relevant part:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is

not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1). In this case, Defendants' counsel filed an affidavit on the record noting that Mr. Lewis is deceased on March 14, 2018 (Dkt. 17-1), a copy of which was served on Plaintiff's counsel (Dkt. 18). More than 90 days have passed, and no motion for substitution has been made. "Rule 25 dictates that, if no motion for substitution is filed within that ninety days, the action shall be dismissed as to the deceased party." *F.D.I.C. v. Cromwell Crossroads Assocs., Ltd. P'ship*, 480 F. Supp. 2d 516, 527 (D. Conn. 2007); *see also Louis v. Metro. Transit Auth.*, No. 12CV6333LDHJO, 2017 WL 1194658, at *2 (E.D.N.Y. Mar. 2, 2017), *report and recommendation adopted sub nom. Louis v. Wright*, No. 12CV6333LDHJO, 2017 WL 1194498 (E.D.N.Y. Mar. 30, 2017) ("If no motion [for substitution] is timely filed, dismissal is mandatory."). Accordingly, Plaintiff's claims against Mr. Lewis are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings (Dkt. 17) is granted in part and denied in part. In particular, the motion is granted with respect to Plaintiff's third cause of action for violation of NYCSL §75, Plaintiff's official capacity claims against the individual defendants, and Plaintiff's claims against Richard Lewis, and is denied in all other respects. The Clerk of Court is instructed to terminate Richard Lewis as a party to this matter.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: January 25, 2019
       Rochester, New York